# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
:
: Docket No. 3:17-CR-257
vs. :
: (Mannion, J.)
ANTHONY FRANK ANGELI, JR. :
:
Defendant :

## DEFENDANT ANTHONY FRANK ANGELI, JR.'S MOTION TO SUPPRESS STATEMENTS AND FOR AN EVIDENTIARY HEARING

Ernest D. Preate, Jr., Esquire (Bar ID 8433)

Ernest D. Preate, Jr., Esquire Law Firm
204 Wyoming Avenue
Second Floor
Scranton, Pennsylvania 18503
570-558-5970 Telephone
570-558-5973 Facsimile

*Counsel for Defendant*

# TABLE OF CONTENTS

FACTS.................................................................................................................. 1

ARGUMENT....................................................................................................... 4

I.      The Questioning of Mr. Angeli Was a Custodial Interrogation.......................... 4

II.     Mr. Angeli Did Not Receive Adequate Miranda Warnings
Before Participating In the August 14, 2017 Interrogation............................... 7

III.    Mr. Angeli Did Not Waive His Constitutional Rights...................................... 9

CONCLUSION................................................................................................... 10

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | : Docket No. 3:17-CR-257 |
| vs. | : |
| | : (Mannion, J.) |
| ANTHONY FRANK ANGELI, JR. | : |
| | : |
| Defendant | : |

## DEFENDANT ANTHONY FRANK ANGELI'S MOTION TO SUPPRESS STATEMENTS AND FOR AN EVIDENTIARY HEARING

TO THE HONORABLE MALACHY E. MANNION, U.S. DISTRICT JUDGE:

Defendant Anthony Frank Angeli, Jr., through undersigned counsel respectfully moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fifth Amendment to the United States Constitution, for an Order suppressing any and all statements allegedly made by him to law enforcement agents in the course of a custodial interrogation as well as any evidence gathered as a result of those statements, and for an evidentiary hearing.

## FACTS

On August 29, 2017, a federal grand jury returned a one-count Indictment against the Anthony Frank Angeli, Jr. charging him with "Stalking" as defined under 18 U.S.C. §2261A. The Defendant has pleaded Not Guilty to the charge.

Prior to the Indictment, FBI Special Agent Larry Whitehead, made an application for a search warrant for Mr. Angeli's town-home located in Moosic, Pennsylvania. The application specifically stated that the FBI Agent was seeking evidence of a crime, contraband, fruits of crime, or other items illegally possessed, and property designed for use, intended for use, or used in committing a crime. Agent Whitehead alleged a violation of Title 18 United States Code,

section 2261 A(2)(B) "Stalking" was committed by Angeli.

That search warrant application was approved by the U.S. Magistrate Judge Karoline Mehalchick on August 10, 2017. On August 14, 2017 Agent Whitehead and other law various law enforcement Agents executed the search warrant at Mr. Angeli's residence while Mr. Angeli was present and alone.

During the execution of that search warrant, Agent Whitehead and other Agents of law enforcement immediately began interrogating Angeli. Angeli became upset based upon the totality of the circumstances and asked law enforcement if he could use his cellular telephone to call his attorney. Agent Whitehead and other law enforcement Agents told him "no, you cannot use any phone, sit down".

Angeli then specifically and repeatedly asked the Agents if he was under arrest and if he could leave the premises while the search was being conducted. Agent Whitehead and other law enforcement Agents told him "no, you are not under arrest but you cannot go anywhere, sit down". Angeli was then confined to the dining area of his town-home.

Prior to the execution of the search warrant being carried out the Agents asked Mr. Angeli if he "spoofed called" the Federal Building in Scranton. They then told Angeli that someone "spoofed called" the United States Attorneys' Office and it was an odd sounding voice and the caller accused a US Attorney of having wild parties at his home. The Agents asked Angeli if he made that call. Angeli denied making the call and the Agents said "we are the 'Feds' and we will find out, so if you did it, you better tell us because it is now a huge deal".

Angeli then asked the Agents what they were referring to and the Agents responded: "senior US Attorney John Gurganus had to answer questions about the call due to the caller claiming there were wild drug and sex parties occurring at Gurganus's residence. Because of the

-2-

questioning, US Attorney Gurganus was knocked down two (2) security levels and it caused him much aggravation". Again, the Agents then asked Angeli if he "spoof called" the federal building. Angeli denied making that telephone call.

Angeli still wanted to speak with his attorney. Angeli asked the Agents if he could use his mobile phone because his attorney's telephone number is saved in the phone. The Agents responded "No, it's already been confiscated". Angeli then asked if he could at least get the telephone number from the phone and once again the Agents responded "no". Angeli was told to call from a neighbor's phone. Two law enforcement Agents accompanied Angeli to a neighbor's home. Angeli spoke to his attorney, Chris Powell, as the Agents listened. When he finished the call he was accompanied by the two Agents back to his home. Upon returning to his home, accompanied by the two agents, Angeli asked if he could leave to go to his attorney's office. The Agents responded "No, I told you you're not leaving until we get the truth, and we have to talk to you!" Angeli told the Agents that his attorney told him to come to see him and the Agents responded "Not until we are done here!"

The Agents then continued to pummel Angeli with question after question, sometimes all at once. Angeli continued denying the accusations. After a few hours the Agents told Angeli "you can do this the hard way or do this the easy way, because if you think this is the worst day of your life you'd better think again if we find out you're lying. We have unlimited resources and the power to get the information". Angeli stated "if you have all the power then why did you come here and waste time, all you have to do is use your power". The Agents responded "keep it up, we have all day and will find any devices used to track, and spoof - you really pissed off Assistant U.S. Attorney Gurganus and he's not happy and you are in big trouble". The Agents continued to interrogate Angeli in an attempt to elicit statements from him.

Mr. Angeli sought the advice of his legal counsel and advised the Agents that upon speaking with his legal counsel he was advised by his attorney to go to his office. Despite this notice to the Agents, the interrogation continued and Angeli was not free to leave and was detained in the dining area of his town-home.

Mr. Angeli submits that an evidentiary hearing is needed to further develop the facts, which are in dispute and determinative of this motion.[1]

## ARGUMENT

### I. The Questioning of Mr. Angeli Was a Custodial Interrogation.

To safeguard the un-counseled, persons subjected to custodial interrogation are entitled to receive from the government certain preliminary warnings regarding their constitutional rights. *Miranda v. Arizona* 384 US. 436, 467 (1966). The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id* at 444. The accused's custodial status "must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances. *Yarborough v. Alvarado* 541 US. 652 662 (2004). In *Thompson v. Keohane* 516 US. 99 (1995), the Court explained the custody test as follows:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second given those circumstances, would a reasonable person have felt he or she was not a liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

---

[1] Mr. Angeli has not had an opportunity to review the entire FBI 302 investigation reports or the agents notes generated during or after the August 14, 2017 interrogation.

-4-

*Id* at 112 (internal quotations omitted). As *Keohane* suggests, courts have established that the totality of the circumstances, including the location of the interrogation, must be taken into consideration when evaluating whether the accused was in custody. *Dickerson v. United States*[2] 530 US. 428, 434 (2000) ("The due process test takes into consideration 'the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation.'"); *Reck v. Pate* 367 US. 433, 440 (1961) ("[A]ll the circumstances attendant upon the confession must be taken into account.").

In this case, the August 14, 2017 meeting was a custodial interrogation because the questioning occurred under circumstances in which a reasonable person would not have felt he was at liberty to terminate the interrogation and leave. See *Thompson* 516 US. at 112. This encounter demonstrates why Mr. Angeli is entitled to relief.

First, it is clear that the government Agents' questioning of Mr. Angeli on August 14, 2017 was an interrogation within the meaning of *Miranda*. The Agents posed "express questions" to Mr. Angeli to which they expected answers and the Agents knew, or should have known, that their questions were reasonably likely to elicit an incriminating response from Mr. Angeli. See *United States v. Bogle* 114 F. 3d 1271, 1275 (D. C. Cir. 1997) ("[T]here is no interrogation triggering the protections of *Miranda* unless, in the totality of the circumstances the officer's questions were 'reasonably likely to elicit an incriminating response.'"). Moreover the questions were inherently coercive and intended, at least in part, to produce admissions of guilt.

---

[2] Courts have defined interrogation as an "express questioning or its functional equivalent." *Rhode Island v. Innis* 446 US. 291, 300-301 (1980). The *Innis* court explained that "the term interrogation ' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id at 301.

Indeed, the questions posed to Mr. Angeli were likely intended to confirm mere suspicions and/or create new charges against Mr. Angeli.

Second, the interrogation was conducted at Mr. Angeli's town-home where Angeli was alone. Angeli was repeatedly instructed that he was not free to leave nor was he allowed access to his telephone to call his attorney or anyone else. He would need to go to a neighbor's home accompanied by multiple Agents who listened to Angeli's conversation with his attorney. Based on the secured nature of the search and Angeli confined by Agents to only the dining room of the town-home for multiple hours, a reasonable person in Mr. Angeli's position would not have reasonably believed that he had the liberty to simply get up and leave. In such an environment, especially after being specifically and repeatedly told that he could neither leave nor use his telephone, there is tremendous compulsion or psychological pressure for the suspect to respond to questions. *Dickerson* 530 US. at 435 ("custodial police interrogation by its very nature, isolates and pressures the [suspect]"). The *Miranda* opinion was based in part on the Court's conclusion that "custodial interrogation was 'psychologically. . . oriented' and that the principal psychological factor contributing to successful interrogation was isolating the suspect in unfamiliar surroundings' for no purpose other than to subjugate the individual to the will of his examiner.'" *Beckwith v. United States* 425 US. 341, 346 n. 7 (1976) (quoting *Miranda v. Arizona* 384 US. 436, 448, 457 (1966)). That is precisely what appears to have happened in this case.

Third, the Agents never advised Mr. Angeli that he was free to leave. Instead, they allowed him to believe that his participation in the interrogation was mandatory. The very manner in which the interrogation was conducted and the words and innuendos used would lead a reasonable person to believe he was in custody. The FBI Agents told Mr. Angeli: "you really pissed off Assistant U.S. Attorney Gurganus and he's not happy and you are in big trouble."

They instilled in Mr. Angeli a sense of fear and urgency. These words had the natural effect of placing Angeli in an agitated state of alarm and caused him to believe that his participation in answering the custodial questions was compulsory.

Fourth, the Agents were verbally aggressive toward Mr. Angeli and during the interrogation challenged the veracity of his statements, and repeatedly questioned him about materials that they claimed evidenced his wrongdoing. These accusations increased not only the level of tension in the interrogation, but also the coercive nature of the environment. More importantly, the clear intent of the government's interrogation tactics was to coerce Mr. Angeli to confess to wrongdoing. Thus, the totality of the circumstances would cause a reasonable person to believe that he was not at liberty to terminate the interrogation.

Because law enforcement Agents engaged in a custodial interrogation of Mr. Angeli, he was entitled to receive, in advance of the interrogation, an appropriate *Miranda* warning regarding his rights under the Fifth Amendment to the Constitution.[3] Additionally, when Angeli asked to leave to go to his attorney's office he should have been allowed, yet that request was ignored and the interrogation of Angeli continued.

## II. Mr. Angeli Did Not Receive Adequate Miranda Warnings Before Participating In the August 14, 2017 Interrogation.

It is well-established that the admissibility of an accused's statements to government investigators in a custodial setting hinges on whether the accused received adequate warnings

---

[3] Throughout that interrogation, law enforcement officials continued to act in a hostile and accusatory manner and never informed Angeli that he was free to end the questioning. Also, his being confronted by numerous agents, and the tone and phrases the agents used-added the atmosphere of coercion.

and voluntarily waived his rights before making the statements.[4] See *Miranda* 384 US. at 475.

The Supreme Court has observed that "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment... not to be compelled to incriminate himself.'" *Dickerson* 530 US. at 435. Accordingly, when questioned in a custodial setting, "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored. *Missouri v. Seibert* 542 US. 600, 608 (2004)." [F]ailure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. *Id.*

In *Miranda*, the Court articulated "concrete constitutional guidelines for law enforcement agencies and courts to follow." 384 US. at 442. Under those guidelines, the admissibility in evidence of any statement given during custodial interrogation is dependent upon whether the law enforcement official informed the suspect that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda* 384 US. at 479; *Bogle* 114 F. 3d at 1274.

No evidence has been presented that government Agents provided Mr. Angeli with a proper *Miranda* warning prior to questioning him on August 14, 2017. Instead, the Agents interrogated Mr. Angeli without warning and attempted to coerce him to incriminate himself. The Agents' failure to apprise Mr. Angeli of his *Miranda* rights violated his constitutional rights

---

[4] As the *Miranda* Court established, "[no] distinction can be drawn between statements which are direct confessions and statements which amount to ' admissions' of part or all of an offense. The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination." *Miranda v. Arizona*, 384 U.S. 436, 476-477 (1966).

and is grounds for suppression of any and all statements that Mr. Angeli made during the course of the interrogation. The document the Agent's claim Mr. Angeli signed is not Angeli's signature.

### III. Mr. Angeli Did Not Waive His Constitutional Rights.

By failing to inform Mr. Angeli of his constitutional rights prior to interrogating him, government Agents deprived Mr. Angeli of even an opportunity to waive those rights. While an effective waiver may allow for admission of an accused's statements into evidence, there must be facts to corroborate that such a waiver was made. "Waivers of constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. *Brady v. United States* 397 US. 742, 748 (1970). Moreover, alleged waivers of fundamental constitutional rights such as the right to counsel and the privilege against self-incrimination will be upheld only after careful inquiry into the factual basis for the alleged waiver. *Miranda* established that "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self- incrimination and his right to retained or appointed counsel." *Miranda* 384 US. at 475.

The question of whether the accused waived a constitutional right "is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. *North Carolina v. Butler* 441 US. 369, 373 (1979). When performing this inquiry, courts must "indulge in every reasonable presumption against waiver." *Brewer Williams* 430 US. 387, 404 (1977). Moreover, courts must again take into account the totality of the circumstances surrounding the case. A suspect's relinquishment of the rights established in *Miranda* must have been voluntary in the sense that it was the product of a free and

deliberate choice rather than intimidation, coercion, or deception. *Moran v. Burbine* 475 US. 412 421 (1986). In addition, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." 475 US. at 421. There is simply no evidence to suggest that Mr. Angeli knowingly, intelligently, and voluntarily waived his constitutional rights. Moreover, the facts attendant to the search and interrogation strongly suggest that he did not intentionally waive any constitutional rights.

## CONCLUSION

Because Mr. Angeli was in custody when he was interrogated on August 14, 2017, the government Agents who conducted these interrogations were required to apprise him of his *Miranda* rights. The burden is on the government to prove by a preponderance of the evidence that its Agents provided Mr. Angeli with the appropriate warnings. *Colorado v. Connelly*, 479 US. 157, 168 (1986). Moreover, for Angeli's statements to be admissible, the government must prove that Mr. Angeli knowingly, intelligently, and voluntarily waived his constitutional rights. Lastly, when Mr. Angeli asked to speak to his attorney and then leave to go to his attorney's office, he was denied and the interrogation of him continued.

To resolve these important issues, Mr. Angeli respectfully requests that this Court conduct an evidentiary hearing to assess whether his statements to law enforcement Agents on August 14, 2017 were obtained in violation of his constitutional rights and whether those statements, as well as any evidence collected on the basis of the statements, must be suppressed.

Date: January 17, 2018

*/S/Ernest D. Preate, Jr., Esquire*
Preate Law Offices
Ernest D. Preate, Jr., Esquire
204 Wyoming Avenue, Second Floor, Suite C
Scranton, Pennsylvania 18503
Telephone: 570-558-5970
Facsimile: 570-558-5973
Email: epreate@comcast.net
PA Attorney ID# 8433

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Docket No. 3:17-CR-257 |
| v. : | |
| : | (Mannion, J.) |
| ANTHONY FRANK ANGELI, JR. : | |
| : | |
| Defendant : | |

## [PROPOSED] ORDER

This matter came before the Court on Defendant Anthony Frank Angeli Jr's. Motion to Suppress Statements. Upon due consideration of the pleadings and the entire record herein, the Court finds that an evidentiary hearing is necessary to develop further facts, which are in dispute and determinative of defendant's motion. It is hereby **ORDERED** that:

An evidentiary hearing will be held on _____, 2018 at _____.

**SO ORDERED.**

BY THE COURT:

Dated _____

_____
MALACHY E. MANNION
U.S. DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Docket No. 3:17-CR-257 |
| vs. : | |
| : | (Mannion, J.) |
| ANTHONY FRANK ANGELI, JR. : | |
| : | |
| Defendant : | |

## CERTIFICATE OF NON-CONCURRENCE

I, Ernest D. Preate, Jr., Esquire, Attorney for defendant Anthony Frank Angeli, Jr., do hereby certify that I have sought concurrence in the defendant's Motion to Suppress upon the United States Attorney Jenny P. Roberts and she is in non-concurrence on the 17th day of January, 2018.

Respectfully submitted.

Dated: January 17, 2018        By: s/Ernest D. Preate, Jr.
                                 ERNEST D. PREATE, JR., ESQUIRE

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | Docket No. 3:17-CR-257 |
| v. | : | |
| | : | (Mannion, J.) |
| ANTHONY FRANK ANGELI, JR. | : | |
| Defendant | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2018, I caused a true and correct copy of the foregoing to be served via the Court's ECF filing system to all counsel of record in this matter.

*/S/Ernest D. Preate, Jr., Esquire*
Ernest D. Preate, Jr., Esquire