UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| -vs- | : | No. 3: 17-CR-257 |
| | : | |
| ANTHONY FRANK ANGELI, JR, | : | (Judge Mannion) |
| Defendant | : | |

## GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANT'S PRETRIAL MOTIONS

On August 29, 2017, a federal grand jury in Scranton returned an indictment charging the defendant with one count of Stalking, Title 18, United States Code, Section 2261A. For the convenience of the Court and the parties, the government has included its response to the defendant's Motion to Dismiss Indictment (Doc. 33) and Motion to Suppress Statements (Doc. 34) in one document.

### BACKGROUND

The defendant and the victim in this matter were in a romantic relationship for approximately six (6) years. The victim ended the relationship in approximately June 2017. Due to harassing, stalking and threatening behavior by the defendant, the victim obtained a Temporary Protection from Abuse (PFA) Order in the Court of Common Pleas of Lackawanna County on June 23, 2017, prohibiting the

defendant from having any contact with her. See attached Exhibit "A".

On July 7, 2017, the court extended the protections of the Temporary

PFA for an indeterminate period of time. See attached Exhibit "B".

After being served with the PFA Order, the defendant continued to

engage in a course of conduct of harassing, intimidating, and surveilling

the victim. The defendant's actions included, but are not limited to

using two separate GPS devices to track the victim's whereabouts,

utilizing a cell phone spoofing application to spoof her telephone

number, repeatedly using his email accounts to post false on-line

reviews about her place of employment, and repeatedly texting the

victim and the victim's family members. All of the defendant's actions

intended to cause, caused, and would reasonably be expected to cause

substantial emotional distress to the victim.

On August 14, 2017, agents with the FBI, with the assistance of

local law enforcement, executed a search warrant on the defendant's

residence. The defendant was read his Miranda Warnings at 10:52 a.m.

and he signed the form acknowledging his understanding of the

warnings at 10:53 a.m. See attached Exhibit "C". The defendant

agreed to speak with law enforcement as indicated in a report attached

as Exhibit "D" and previously provided to defense counsel in discovery. Upon questioning, the defendant immediately made admissions to law enforcement regarding his criminal conduct towards the victim.

During the search, investigators located and seized the defendant's work iPad. When requested to provide the access code for the iPad, the defendant requested to contact his attorney. Law enforcement looked up the telephone number of the defendant's attorney and provided it to the defendant. Because the defendant's cell phone had already been seized for evidentiary purposes, law enforcement escorted him to his neighbors residence to place the call. When the defendant contacted his attorney, he had an extremely brief conversation and merely asked whether he had to surrender his work iPad to law enforcement. After ending the call with his attorney, the defendant informed law enforcement that his attorney told him to cooperate and that they would deal with it at a later time.

Upon returning to his residence, the defendant specifically requested to speak with a particular agent. He made further admissions regarding his criminal acts against the victim. At no time did the defendant request to meet with his attorney or to discontinue

his interview. The defendant also signed a receipt of inventory for the items taken pursuant to the warrant. See attached Exhibit "E".

Following the interview, the defendant was immediately placed under arrest by local law enforcement for indirect criminal contempt for violating the PFA. At 12:35 p.m. he was transported to central booking in Scranton and processed at 1:16p.m. See attached Exhibit "F".

## DEFENDANT'S MOTION TO DIMSISS

The defendant moves to dismiss the indictment against him on three grounds as discussed below.

### a. The charge of Stalking does not violate the Free Speech Clause of the First Amendment.

The defendant first alleges that the Stalking charge, 18 U.S.C. § 2261A, violates the Free Speech Clause of the First Amendment because it is overbroad. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." *U.S. Const., amend. I.* "'[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65 (1983)). "[T]he First Amendment has

4

permitted restrictions upon the content of speech in a few limited areas," however, "including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct . . . ." *United States v. Stevens*, 559 U.S. 460, 468-69 (2010) (internal citations omitted). The defendant's sole unsubstantiated argument is that the statute criminalizes a broad range of constitutionally protected speech that does not fall into an exception. (Doc 33).

A statute should be invalidated as unconstitutionally overbroad only if "a substantial number of its applications are unconstitutional judged in relation to the statute's plainly legitimate sweep," and "if no reasonable limiting construction is available that would render the policy constitutional." *United States v. Matusiewicz*, 84 F. Supp.3d 363, 367 (D. Delaware 2015) (citing *Stevens* at 473 and *Sypniewski v. Warren Hills Regional Bd. Of Educ.*, 307 F.3d 243, 258 (3d Cir. 2002)). "For an overbreadth challenge to succeed, the law in question must frequently intrude into areas of protective speech". *Matusiewicz*, at 367.

Courts have already specifically addressed whether Title 18 U.S.C. § 2261A is overbroad. In *United States v. Petrovic*, 701 F.3d

849, 857 (8th Cir. 2013) the court reasoned that § 2261A is not facially invalid under the First Amendment because it bans harassing criminal conduct, not speech. In *United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014), the court relied on *Petrovic* when it determined § 2261A is not facially invalid because it "proscribes harassing and intimidating conduct." The defendant has failed to provide any examples or proof of how the statute criminalizes constitutionally protected speech.

The defendant has also failed to allege specifically how the statute is unconstitutional as applied to this case. Assumedly, the defendant's argument is that the government is attempting to punish him for the content of speech. To the contrary, the government is alleging that the defendant's course of conduct with the intent to harass, intimidate and place under surveillance is the criminal conduct. Furthermore, any actual speech that occurred during this course of conduct is unprotected speech.

In *Stevens*, the court stated "Since its enactment, the First Amendment has permitted restrictions on a few historic categories of speech-including obscenity, defamation, fraud, incitement, and speech integral to criminal conduct-that have never been thought to raise any

6

Constitutional problem." 559 U.S. 460, 460 (2010) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). The speech in this matter falls into two of the above mentioned categories, defamation and speech integral to the commission of a criminal offense.

More specifically, when the defendant posted numerous negative false reviews on-line about the victim's place of employment and the victim's own capacity to perform her job, the defendant was attempting to damage her reputation. See *Pierce v. Capital Cities Communications, Inc.*, 576 F.2d 495, 502 (3d Cir. 1978). The defendant also made a telephone call to the United States Attorney's Office falsely accusing a member of the office of being involved in illegal activities. The defendant's on-line postings and telephone call to the U.S. Attorney's Office were malicious, calculated falsehoods, unprotected by the First Amendment. See, *Id* at 507-508.

The remaining speech used in the defendant's criminal course of conduct, contained in numerous electronically sent messages and phone calls, should be considered integral to the commission of a criminal offense as defined by *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949). In *Giboney*, the Court found that the speech at issue, picketing,

was means to cause another party to commit an offense and therefore not protected speech. *Id.* at 501. Although the Third Circuit has failed to apply the *Giboney* on one occasion, it has not had the opportunity to address the constitutionality of the stalking charge at issue in this case. See *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014). However, other courts have relied on *Giboney* when reviewing the constitutionality of the stalking statute and all but one has held that the speech involved was not protected.[1] *Matusiewicz* at 370; see also *Petrovic*, 701 F.3d at 857 (Court relied on *Giboney* when it ruled that the defendant's speech was not protected and was integral to his criminal conduct when he posted sexually explicit images on the internet of his ex-girlfriend and offered to take them down in exchange for money.); *United States v. Sayer*, 748 F.3d 425 (1st Cir. 2014); *Osinger*, 753 F.3d at 944. The courts in the above cited cases determined that there was no legitimate purpose for the speech at issue. It is important to note that the defendant has failed to allege any legitimate purpose for his speech in this case. The stalking statute is

---

[1] In *United States v. Cassidy*, 814 F.Supp.2d 574 (D.Md. 2011), the speech in question involved criticism of a religious organization and was determined to have a legitimate purpose.

not overbroad generally or specifically as applied in this case. Accordingly, the defendant's motion fails.

### b. The charge of stalking is not unconstitutionally vague.

The defendant's next argument is that the stalking charge is unconstitutionally vague and violates the defendant's Fifth Amendment rights because it does not give notice as to the specific criminal conduct. (Doc. 33). This issue was specifically addressed by the court in *Matusiewicz.* 84 F. Supp. 3d at 373. The *Matusiewicz* court relied on the Third Circuit test, as discussed in *United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008) for examining a vagueness challenge to a statute. *Id.* The *Stevens* court stated,

> A statute is void on vagueness grounds if it: (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits'; or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.

533 at 249 (citing *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). Using this test, the *Matusiewicz* court determined that 18 U.S.C. § 2261A is not unconstitutionally vague because (1) the statute is a specific intent crime which "reduces the risk that a person might commit the actions the statute proscribes without having notice of their unlawfulness".

*Matusiewicz* at 374 (citing *Village of Hoffman Estates v. Flipside,*
*Hoffman Estates, Inc.,* 455 U.S. 489, 499 (1982)); (2) the statute
"imposes an objective standard relating to the fear or emotional distress
that a victim suffers as a result of a defendant's travel or course of
conduct undertaken with criminal intent," *Matusiewicz* at 374-375; and
(3) "a reasonable person would have notice that the conduct alleged in
this case would violate the statute." *Id.* at 375.

The stalking statute is also not vague as applied specifically to the
defendant, as stated in the indictment. The Fifth amendment provides
in part that "[n]o person shall be held to answer for a capital, or
otherwise infamous crime, unless on a presentment or indictment of a
Grand Jury." *U.S. Const.,* amend. V. Under the Sixth Amendment,
"the accused shall enjoy the right...to be informed of the nature and
cause of the accusation." *Id.* amend. VI. The indictment must include a
"plain, concise, and definitive written statement of the essential facts
constituting the offense charged..." *Fed. R. Crim. P. 7(c)(1).* However,
the indictment need not "include every fact to be alleged by the
Government." *United States v. Moyer,* 674 F.3d 192, 203 (3d Cir. 2012).
The Government is not required to furnish a "detailed exposition of its

evidence or to explain the legal theories upon which it intends to rely at trial." *United States v. Delle Donna*, 552 F.Supp. 2d 475, 498 (D.N.J. 2008) (quoting *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980)).

The indictment tracks the language of the statute and provides the defendant with sufficient notice of what conduct is alleged to be unlawful. The defendant is not prejudiced nor unable to defend himself due to being uncertain as to the alleged criminal conduct. See *United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1971). Importantly, this court has already determined that the indictment "puts Angeli on sufficient notice of the elements of the crime he was charged with and allows him ample opportunity to prepare his defense to said crime." (Doc 17) Accordingly this argument must fail.

c. **There is no double jeopardy between separate sovereigns.**

Should the constitutionality claims fail, the defendant's final argument is that the Double Jeopardy Clause of the Fifth Amendment bars the United States from prosecuting the defendant for Stalking, Title 18, U.S.C. § 2261A, when he was previously convicted of indirect criminal contempt, Title 23, Pa.C.S.A. § 6114A, by the Commonwealth

of Pennsylvania. It is the Government's position that this argument fails because of the dual sovereignty doctrine.

The ultimate question when determining the applicability of the dual sovereignty doctrine is "whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns." *Heath v. Alabama*, 474 U.S. 82, 88 (1985). It is well established that the States and the Federal Government are separate sovereigns. In *Heath*, the Court stated,

> It has been uniformly held that the States are separate
> sovereigns with respect to the Federal Government because
> each State's power to prosecute derives from its inherent
> sovereignty, preserved to it by the Tenth Amendment, and
> not from the Federal Government.

*Id.* at 82. See *United States v. Wheeler*, 435 U.S. 313, 320 (1978).

Accordingly, the defendant's claim of Double Jeopardy must fail.

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

The defendant's first argument with regard to suppression is that law enforcement engaged in a custodial interrogation of the defendant on August 14, 2017 requiring Miranda Warnings. The government does not believe there is a need to address the issue of whether it was a custodial interrogation since it asserts that Miranda Warnings were not

only read to the defendant, but also waived by the defendant, as documented by a signed waiver. See attached Exhibit "C".

The defendant's second argument requesting suppression is that there is no evidence presented by the government that law enforcement provided the defendant with a proper *Miranda* warning. To the contrary, in discovery, defense counsel was given a copy of the *Miranda* warnings and waiver that the defendant signed prior to initiation of questioning. The warnings listed on the form that the defendant signed are clearly adequate and comply with the requirements under *Miranda v Arizona*, 384 U.S. 436 (1966).

The defendant's final argument for suppression appears to be that law enforcement failed to inform the defendant of his constitutional rights prior to questioning him, but even if they did, he did not knowingly and voluntarily waive those rights. When determining voluntariness, courts have taken a totality of the circumstances approach. See *United States v. Naranjo*, 223 Fed.Appx. 167 (3d Cir. 2007). The court in *Naranjo*, stated that "courts should examine all 'the surrounding circumstances and the entire course of police conduct' in

determining voluntariness." *Id.* at 170 (citing *Oregon v. Elstad*, 470 U.S. 298, 318 (1985).

In *United States v. Price*, 558 F.3d 270, 277-278 (3d Cir. 2009), the Third Circuit set forth factors useful in determining whether consent to search is voluntary: age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment, the setting in which consent was obtained and the parties' verbal and non-verbal actions. *Id.* All of these factors weigh in the government's favor here.

The defendant was an adult when he gave the statements at issue here, and a college-educated professional. He had the sophistication, education, and intelligence to understand the circumstances and knowingly waive his *Miranda* rights. The defendant was advised of his rights, and signed the waiver form within minutes. Questioning was brief, as the entire encounter lasted only approximately one hour and forty minutes; agents will testify that the defendant immediately admitted to the criminal conduct under investigation. No physical punishment was used—the defendant was not even handcuffed during

the interview—and the encounter took place in his own home, during which he was permitted to leave his residence and call his attorney.

The government asserts that at the time of the suppression hearing, testimony from law enforcement officers present during the defendant's interview will clearly evidence that the defendant not only was read his *Miranda* warnings, but knowingly and voluntarily waived them.

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny the defendant's Motion to Dismiss and Motion to Suppress.

Respectfully submitted,

DAVID J. FREED
United States Attorney

/s/ Jenny P. Roberts
JENNY P. ROBERTS
Assistant U.S. Attorney
Pa. Bar No. 89330
jenny.roberts@usdoj.gov

/s/ Sean Camoni
Assistant U.S. Attorney
Sean.A.Camoni@usdoj.gov

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| -vs- | : | No. 3: 17-CR-257 |
| | : | |
| ANTHONY FRANK ANGELI, JR, | : | (Judge Mannion) |
| Defendant | : | |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Office of the

United States Attorney for the Middle District of Pennsylvania and is a person of

such age and discretion to be competent to serve papers.

That this 29th day of January 2018, she served a copy of the attached

## GOVERNMENT'S BRIEF IN OPPOSITION TO
## DEFENDANT'S PRETRIAL MOTIONS

by electronic filing, to counsel for the defendant:

Ernest Preate, Jr., Esquire

/s/ Donna Borgia
Donna Borgia
Legal Assistant

# ATTACHMENT A

Mary Peters
(Name)

IN THE COURT OF COMMON PLEAS
OF LACKAWANNA COUNTY

FAMILY DIVISION

PROTECTION FROM ABUSE

(City, State, Zip Code)          (Plaintiff)

_17_ FC _40839_

vs.

Anthony F. Angeli, Jr.
(Name)

1106 Tennyson Close
(Address)

Moosic, PA 18507
(City, State, Zip Code)       (Defendant)

***TEMPORARY PROTECTION FROM ABUSE ORDER***

Defendant's Name:  Anthony F. Angeli, Jr.

Defendant's Date of Birth:

Defendant's Social Security Number:

Name of Plaintiff and/or minor child(ren) seeking Protection from Abuse:  Mary
Peters + William V. Peters, JR.

AND NOW, this _23rd_ day of _June_, 20 _17_, upon consideration of
the attached Petition for Protection from Abuse, the Court hereby enters the following Temporary
Order.

X  1. Defendant shall not abuse, harass, stalk or threaten any of the person(s) seeking
Protection from Abuse.

X  2. Defendant is evicted and/or excluded from the residence located at

_and any other
permanent/temporary residence where the Plaintiff and/or minor child(ren) may reside.

X 3. Except for such contact with the minor child(ren) as may be permitted under paragraph five (5) of this Order, (relating to child custody) Defendant is prohibited from having any contact with the Plaintiff and/or minor child(ren) either directly or indirectly, at any location, including but not limited to any contact at Plaintiff's school, business or place of employment. Defendant is specifically ordered to stay away from the following locations for the duration of this Order:

X 4. Except for such contact with the minor child(ren) as may be permitted under paragraph five (5) (relating to child custody) of this Order, Defendant shall not contact Plaintiff and/or minor child(ren) in person, by telephone, text messaging, email or in writing personally and/or through a third party.

_____ 5. Pending the outcome of the final hearing in this matter, Plaintiff is awarded temporary custody of following minor child(ren)

_____.

Defendant shall be allowed the following contact with the minor child(ren)

_____

_____.

_____ This Order supersedes any prior Order relating to child custody.

_____ 6. Defendant shall immediately relinquish the following weapons to the Sheriff's Office or any designated local law enforcement agency for delivery to the Sheriff's Office

_____

_____.

_____ Defendant shall relinquish to the Sheriff all firearms and firearms license(s) owned and/or possessed by the Defendant.

_____ Defendant is directed to relinquish to the Sheriff any firearms, other weapons or ammunition listed in Petitioner's attachment A, and any firearms license(s) that the Defendant may possess.

Defendant may relinquish any firearms, other weapons or ammunition to the Sheriff. As an alternative, Defendant may relinquish firearms, other weapons and ammunition to a third party provided Defendant and the third party first comply with all the requirements to obtain a safekeeping permit. Defendant must relinquish any firearms, other weapons, ammunition or firearms license(s) ordered to be relinquished no later than 24 hours after service of this Order. Failure to timely relinquish any firearms, other weapons, ammunition or any firearms license(s) shall result in a violation of this Order any may result in criminal conviction under the Uniform Firearms Act, 18 Pa.C.S.A. Section 6105.

_____ 7. Defendant is prohibited from stalking and harassing, as defined in 18 Pa.C.S.A. Section 2709, the following family and/or household members of the Plaintiff:

Name _____  Relationship _____  Address _____

Name _____  Relationship _____  Address _____

Name _____  Relationship _____  Address _____

X 8. The following additional relief is granted: Defendant to reveal location of GPS tracking device

X 9. A certified copy of this Order shall be provided to the South Abington Police Dept. Police Department where the Plaintiff resides.

_____ 10. This Order supersedes:

   A. _____ any prior Protection From Abuse Order

   B. _____ any prior Order relating to child custody

## 11. THIS ORDER APPLIES IMMEDIATELY TO DEFENDANT AND SHALL REMAIN IN EFFECT UNTIL MODIFIED OR TERMINATED BY THE COURT AFTER NOTICE AND HEARING.

## NOTICE TO THE DEFENDANT

Defendant is hereby notified that violation of this Order may result in arrest for indirect criminal contempt, which is punishable by a fine of up to $1,000.00 and/or six months in jail. 23 Pa.C.S.A. Section 6114. Consent of Plaintiff to Defendant to return to the residence shall **not** invalidate this Order, which can only be changed or modified through the filing of appropriate Court papers for

that purpose. 23 Pa.C.S.A. Section 6108(g). If Defendant is required to relinquish any firearms, ther weapons or ammunition or any firearms license, those items must be relinquished to the Sheriff within 24 hours of the service of this Order. As an alternative, Defendant may relinquish any firearms, other weapons or ammunition listed herein to a third party provided Defendant and the third party first comply with all requirements to obtain a safekeeping permit. If, due to their current location, firearms, other weapons or ammunition cannot reasonably be retrieved within the time for relinquishment; Defendant shall provide an affidavit to the Sheriff listing the firearms, other weapons or ammunition and their current location no later than 24 hours after the service of this Order. Defendant is further notified that violation of this Order may subject him/her to state charges and penalties under the Pennsylvania Crimes Code and to federal charges and penalties under the Violence Against Women Act, 18 U.S.C. Sections 2261-2262.

### NOTICE TO SHERIFF, POLICE AND LAW ENFORCEMENT OFFICIALS

This Order shall be enforced by the police department or sheriff who has jurisdiction over the Plaintiff's residence or any location where a violation of this Order occurs or where Defendant may be located. If Defendant violates Paragraphs 1 through 6 of this Order, Defendant shall be arrested on the charge of Indirect Criminal Contempt. An arrest for violation of this Order may be made without warrant, based solely on probable cause, whether or not the violation is committed in the presence of law enforcement, a police officer or sheriff.

Subsequent to an arrest, the law enforcement officer or sheriff shall seize all firearms, other weapons and ammunition in Defendant's possession which where used or threatened to be used during the violation of the protection Order or during prior incidents of abuse and any other firearms in Defendant's possession. Any firearm, other weapons, ammunition or any firearms license(s) must be delivered to the sheriff's office of the county which issued this Order, which office shall maintain possession of the firearms, other weapons and ammunition until further Order of this Court, unless the weapon(s) are evidence of a crime, in which case, they shall remain with the law enforcement agency whose officer or sheriff made the arrest.

BY THE COURT:

6/23/17

Date

JUDGE

# ATTACHMENT B



| **TEMPORARY PROTECTION FROM ABUSE ORDER**<br>☐ Amended Order  ☒ Continued Order | IN THE COURT OF COMMON PLEAS OF Lackawanna COUNTY, PENNSYLVANIA<br>NO. 17-40839 |
|---|---|

## 1. PLAINTIFF

| MARY | | PETERS | | |
|---|---|---|---|---|
| First | Middle | Last | Suffix | Plaintiff DOB |

Name(s) of All protected persons, including minor child/ren and DOB.

MARY PETERS    WILLIAM V. PETERS Jr

### V.

| DEFENDANT | | | |
|---|---|---|---|
| ANTHONY | F. | ANGELI | |
| First | Middle | Last | Suffix |

Defendant's Address:

1106 TENNYSON CLOSE

MOOSIC Pennsylvania 18507

**CAUTION:**

☐ Weapon Involved

☐ Weapon Present on the Property

☒ Weapon Ordered Relinquished

| DEFENDANT IDENTIFIERS | | |
|---|---|---|
| DOB | HEIGHT | ort. 1 |
| SEX | Male | WEIGHT 198 |
| RACE | White | EYES ◁ Brown |
| HAIR | Brown | |
| SSN | | |
| DRIVERS LICENSE # | | |
| EXP DATE | | STATE |

**The Court Hereby Finds:** That it has jurisdiction over the parties and subject matter, and the Defendant will be provided with reasonable notice and opportunity to be heard.

**The Court Hereby Orders:**

☒ Defendant shall not abuse, harass, stalk or threaten any of the above persons in any place where they might be found.

☒ ~~Except for such contact with the minor child/ren as may be permitted under paragraph 5 of this order,~~ Defendant shall not contact Plaintiff, or any other person protected under this order, by telephone or by any other means, including through third persons.

☒ Additional findings of this order are set forth below.

**Order Effective Date** July 7, 2017 **Order Expiration Date** UNTIL OTHERWISE MODIFIED OR TERMINATED BY THIS COURT

---

### NOTICE TO THE DEFENDANT

Defendant is hereby notified that violation of this order may result in arrest for indirect criminal contempt, which is punishable by a fine of up to $1,000 and/or up to six months in jail. 23 Pa.C.S.A. § 6114. Consent of Plaintiff to Defendant's return to the residence shall not invalidate this order, which can only be changed or modified through the filing of appropriate court papers for that purpose. 23 Pa.C.S.A. § 6108 (g). If Defendant is required to relinquish any firearms, other weapons or ammunition or any firearm license, those items must be relinquished to the sheriff within 24 hours of the service of this order. As an alternative, Defendant may relinquish any firearm, other weapon or ammunition listed herein to a third party provided Defendant and the third party first comply with all requirements to obtain a safekeeping permit. If, due to their current location, firearms, other weapons or ammunition cannot reasonably be retrieved within the time for relinquishment, Defendant shall provide an affidavit to the sheriff listing the firearms, other weapons or ammunition and their current location no later than 24 hours after the service of this order. Defendant is further notified that violation of this order may subject him/her to state charges and penalties under the Pennsylvania Crimes Code and to federal charges and penalties under the Violence Against Women Act, 18 U.S.C. § § 2261-2262.

AND NOW, on **7th Day of July, 2017** DEFENDANT TO GO TO ANGER MANAGEMENT CLASSES AND TO SHOW THAT DEFENDANT ATTENDED CLASSES.

**Plaintiff's request for a continued temporary protection order is granted.**

1. Defendant shall not abuse, harass, stalk or threaten any of the above persons in any place where they might be found.

2. Defendant is evicted and excluded from the residence at:

or any other permanent or temporary residence where Plaintiff or any other person protected under this order may live. Plaintiff is granted exclusive possession of the residence. Defendant shall have no right or privilege to enter or be present on the premises of Plaintiff or any other person protected under this order.

3. Defendant is prohibited from having **ANY CONTACT** with Plaintiff, or any other person protected under this order either directly or indirectly, at any location, including but not limited to any contact at Plaintiff's or other protected party's school, business, or place of employment. Defendant is specifically ordered to stay away from the following locations for the duration of this order.

4. Defendant shall not contact Plaintiff, or any other person protected under this order, by telephone or by any other means, including through third persons.

5. FIREARMS, OTHER WEAPONS AND AMMUNITION RESTRICTIONS

Defendant is prohibited from possessing, transferring or acquiring any firearms for the duration of this order.

Defendant is directed to relinquish to the sheriff any firearm, other weapon or ammunition listed in Attachment A to Temporary Order, which is incorporated herein by references.

Defendant may relinquish any firearms, other weapons or ammunition to the sheriff. As an alternative, Defendant may relinquish firearms, other weapons and ammunition to a third party provided Defendant and the third party first comply with all the requirements to obtain a safekeeping permit. Defendant must relinquish any firearm, other weapon, ammunition or firearm license ordered to be relinquished no later than 24 hours after service of this order. If, due to their current location, firearms, other weapons or ammunition cannot reasonably be retrieved within the time for relinquishment, Defendant shall provide to the sheriff an affidavit listing the firearms, other weapons or ammunition and their current location no later than 24 hours after service of this order. Failure to timely relinquish any firearm, other weapon, ammunition or any firearm license shall result in a violation of this order and may result in criminal conviction under the Uniform Firearms Act, 18 Pa. C.S.A. §6105.

6. A certified copy of this order shall be provided to the sheriff or police department where Plaintiff resides and any other agency specified here after:
**SOUTH ABINGTON TOWNSHIP POLICE DEPARTMENT**

7. The sheriff, police or other law enforcement agencies are directed to serve Defendant with a copy of the petition, any order issued, and the order for hearing. Petitioner will inform the designated authority of any addresses, other than Defendant's residence, where Defendant can be served.

8. THIS ORDER APPLIES IMMEDIATELY TO DEFENDANT AND SHALL REMAIN IN EFFECT UNTIL OTHERWISE MODIFIED OR TERMINATED BY THIS COURT AFTER NOTICE AND HEARING.

A hearing on this matter is scheduled for the 6th Day of July, 2018 at 9:15 AM in Courtroom 1A of the Lackawanna County Family Center, 1st Floor 200 Adams Avenue, Scranton PA.

## NOTICE TO THE DEFENDANT

Defendant is hereby notified that violation of this order may result in arrest for indirect criminal contempt, which is punishable by a fine of up to $1,000 and/or up to six months in jail. 23 Pa.C.S.A. § 6114. Consent of Plaintiff to Defendant's return to the residence shall **not** invalidate this order, which can only be changed or modified through the filing of appropriate court papers for that purpose. 23 Pa.C.S.A. § 6108 (g). If Defendant is required to relinquish any firearms, other weapons or ammunition or any firearm license, those items must be relinquished to the sheriff within 24 hours of the service of this order. As an alternative, Defendant may relinquish any firearm, other weapon or ammunition listed herein to a third party provided Defendant and the third party first comply with all requirements to obtain a safekeeping permit. If, due to their current location, firearms, other weapons or ammunition cannot reasonably be retrieved within the time for relinquishment, Defendant shall provide an affidavit to the sheriff listing the firearms, other weapons or ammunition and their current location no later than 24 hours after the service of this order. Defendant is further notified that violation of this order may subject him/her to state charges and penalties under the Pennsylvania Crimes Code and to federal charges and penalties under the Violence Against Women Act, 18 U.S.C. § § 2261-2262.

## NOTICE TO SHERIFF, POLICE AND LAW ENFORCEMENT OFFICIALS

This order shall be enforced by the police department or sheriff who has jurisdiction over Plaintiff's residence OR any location where a violation of this order occurs OR where Defendant may be located. If Defendant violates Paragraphs 1 through 5 of this order, Defendant shall be arrested on the charge of indirect criminal contempt. An arrest for violation of this order may be made without warrant, based solely on probable cause, whether or not the violation is committed in the presence of a police officer or sheriff.

Subsequent to an arrest, the law enforcement officer or sheriff shall seize all firearms, other weapons and ammunition in Defendant's possession which were used or threatened to be used during the violation of the protection order or during prior incidents of abuse and any other firearms in Defendant's possession. Any firearm, other weapon, ammunition or any firearm license must be delivered to the sheriff's office of the county which issued this order, which office shall maintain possession of the firearms, other weapons and ammunition until further order of this court, unless the weapon/s are evidence of a crime, in which case, they shall remain with the law enforcement agency whose officer or sheriff made the arrest.

BY THE COURT:

Julia K. Munley, Judge

July 7, 2017

Date

Distribution to:
Plaintiff, Defendant, Sheriff, Police Dept. of Plaintiff's residence

# ATTACHMENT C

FD-395
Revised
11-05-2002

FEDERAL BUREAU OF INVESTIGATION
## ADVICE OF RIGHTS

### LOCATION

Place: Moosic, PA

Date: 8/14/20?

Time: 10:52 AM

### YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions.

You have the right to have a lawyer with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

### CONSENT

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Yes, sir

Signed: _Anthony Allen Sr._

### WITNESS

Witness: _____

Witness: Det. Tom Davis

Time: 10 53 AM

FEDERAL BUREAU OF INVESTIGATION
ANGELI0000074

# ATTACHMENT D

 OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    08/23/2017

On August 14, 2017, the following investigators participated in the execution of a search warrant (3:17-MC-483) at ANTHONY ANGELI, Jr.'s residence located at 1106 Tennyson Close, Moosic, Pennsylvania (PA): Special Agent (SA) Larry Whitehead, SA Joseph F. Noone, SA Shawn B. McMillen, Task Force Officer (TFO) Christopher Lynch and TFO Timothy Harding, Federal Bureau of Investigation (FBI); Detective Thomas Davis, Lackawanna County District Attorney's Office (LCDAO); and Officer James Decker and Officer James Giehl, Moosic Police Department (MPD).

At approximately 10:39 AM, after confirming ANGELI was present at his residence, investigators approached ANGELI's residence and knocked at the front door and rang the doorbell several times. Investigators looked into the basement sliding glass door and did not see ANGELI. Investigators decided to forcibly enter ANGELI's entrance. Investigators opened ANGELI's garage door so the inner door could be breached in order to secure the residence after execution of the search warrant. Investigators again knocked and announced their presence at the door inside of the garage. ANGELI opened the door wearing a towel, and explained he was in the shower.

Investigators entered ANGELI's residence and escorted ANGELI into his bedroom so that ANGELI could dress. SA Whitehead told ANGELI he would explain the purpose for the law enforcement presence at his residence after ANGELI dressed. After ANGELI was dressed SA Whitehead invited ANGELI to sit at his dining room table.

SA Whitehead informed ANGELI the FBI was tasked with investigating a telephone call received by the United States Attorney's Office (USAO) alleging misconduct by an Assistant United States Attorney. SA Whitehead told ANGELI the investigation revealed the caller to be ANGELI from a "spoofed" telephone number. SA Whitehead informed ANGELI that investigators wanted to learn why ANGELI decided to call the USAO.

At approximately 10:52 AM, SA Whitehead, in the presence of Detective Davis and others, advised ANGELI of his Miranda Rights. ANGELI acknowledged he understood his Rights and agreed to waive them and speak with investigators, evidenced by his signature on the Advice of Rights form.

| Investigation on | 08/14/2017 | at | Moosic, Pennsylvania, United States (In Person) |
|---|---|---|---|

File # 9E-PH-2196635

Date drafted 08/14/2017

by Larry Whitehead, Joseph F. Noone

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

ANGELI00000111

ANGELI explained he was engaged to MARY PETERS for approximately six years, and on three occasions they had planned to be married. On each of the three occasions PETERS cancelled their wedding plans. During June of 2017 PETERS abruptly ended their relationship, and ANGELI admitted to having a difficult time with the breakup. A friend told ANGELI that PETERS was spending a lot of time with her friend who was dating an AUSA. ANGELI admitted he called the USAO with a spoofed telephone number in order to embarrass PETERS and get back at her.

ANGELI expressed regrets for his behavior and stated he was embarrassed by his conduct.

A friend told ANGELI about the spoofing application which ANGELI downloaded onto his cellular telephone. The spoofing application also had an option to change the caller's voice. ANGELI admitted he utilized the spoofing application to send text messages to PETERS. ANGELI stated his actions were wrong and he was led by his emotions. ANGELI advised a friend from Stroudsburg, PA, (MARK SVEDABA) tried to talk him out of the harassment.

Investigators asked ANGELI if he utilized other means of attempting to harass PETERS, and ANGELI stated he only sent text messages. SA Whitehead asked ANGELI if he utilized any GPS tracking devices on PETERS' vehicle, and ANGELI denied installing a tracking device on PETERS' vehicle.

SA Whitehead informed ANGELI of the search warrant, and that investigators were seizing all the computers, cellular devices and tracking devices located in his residence. Investigators asked ANGELI for the access code for his iPhone and ANGELI provided the following code: 639500. Detective Davis accessed ANGELI's cellular telephone and placed the device in the airplane mode.

ANGELI advised PETERS obtained a Protection from Abuse (PFA) Order against him, issued in Lackawanna County. ANGELI alleged that PETERS lied to Judge Julia Munley when she obtained the PFA.

ANGELI admitted he called and sent text messages to PETERS' as well as PETERS' friends and family members from both his known cellular telephone number and spoofed telephone numbers. SA Whitehead asked ANGELI if he ever sent an email or harassed PETERS at PETERS' work. ANGELI said he did not attempt to contact PETERS at her work. ANGELI was confronted with information that an IP address linked postings on the Sabatini Law Firm website targeting PETERS to his address and email account. ANGELI then admitted he posted on the Sabatini Law Firm in an attempt to get back at PETERS.

ANGELI00000112

ANGELI alleged that during 2015 PETERS hacked into his email from her work computer, but ANGELI chose not to get PETERS in trouble. ANGELI alleged that PETERS hacked into his yahoo and gmail accounts. ANGELI advised the one hacked email was 1963tenny@gmail.com. ANGELI stated during 2015 he discussed the hacking by PETERS with Attorney Carlo Sabatini. ANGELI believed the hacking compromised his identity and his identity was stolen by others on the internet. ANGELI stated he recently won a $2,600.00 claim against Capital One.

Investigators informed ANGELI that two tracking devices were removed from PETERS' vehicle, and investigators believed ANGELI installed the tracking devices onto PETERS' vehicle. Detective Davis confronted ANGELI with information that when the first tracking device was removed from PETERS' vehicle ANGELI was observed in the vicinity of PETERS' vehicle. ANGELI stated it was coincidental that he was in the vicinity of PETERS' vehicle at that time. SA Whitehead informed ANGELI that legal process would be served on Spytec seeking information regarding the sale of the two seized tracking devices. SA Whitehead asked ANGELI for the access code for his iPad. ANGELI asked if he had to provide the access code, and SA Whitehead informed ANGELI that if he elected to not provide the access code then the computer forensic team would attempt to hack into the device.

ANGELI asked if he could call his attorney. SA Whitehead told ANGELI he could call his attorney, but he could not use his cellular telephone to place the call because it was preserved for evidence. Investigators told ANGELI he was free to walk to a neighbor's house to use their telephone. Detective Davis and Officer Decker accompanied ANGELI to a neighbor's house where ANGELI called Attorney Chris Powell. During the telephone conversation Detective Davis heard ANGELI ask his attorney if he had to surrender his work iPad. Detective Davis told ANGELI that leaving the iPad was not an option. After ANGELI terminated the telephone call he returned to his residence.

When ANGELI returned to his residence he asked to speak with SA Noone. ANGELI admitted he purchased a tracking device from Spytec, Inc, and offered to show SA Noone where he stored the box that contained the tracking device. ANGELI went to a kitchen cabinet and retrieved a box displaying Spytec STI_GL300 GPS Tracker. ANGELI also provided an invoice depicting the purchase of the tracking device. ANGELI stated he purchased the tracking device with his Visa debit card, 4727-0200-0008-7165. ANGELI utilized his iPad to monitor the tracking device. SA Noone asked ANGELI if he installed both tracking devices and ANGELI said he installed both tracking devices. SA Whitehead confronted ANGELI that he did not install the tracking device on PETERS' vehicle on Monday, August 7, 2017. ANGELI corrected his statement and stated he asked a friend, LOUIS NEHME, to

ANGELI00000113

FD-302a (Rev. 05-08-10)

9E-PH-2196635

Continuation of FD-302 of (U) Interview of Anthony Angeli, Jr.      On 08/14/2017   Page  4 of 5

install the tracking device on PETERS' vehicle. ANGELI instructed NEHME to install the tracking device on PETERS' vehicle while it was parked at her place of work. ANGELI advised that approximately three or four weeks earlier he installed a tracking device on PETERS' white Toyota RAV4 while it was parked at her place of employment, and tracked PETERS' movements with his iPad.

ANGELI explained he utilized the tracking device and followed her to Playtime Boutique located on Route 6. ANGELI went into the business and asked the clerk if a blonde woman was in the store, and what she purchased. The clerk told ANGELI what item the blonde woman purchased, described as sexy clothing. ANGELI told investigators, "I was jealous," because PETERS never did that stuff with him.

ANGELI recalled the AUSA's name was Gurganus and PETERS is a friend of Gurganus' girlfriend, Caroleena Cole.

Investigators asked ANGELI if he called Applewood Acres and left messages regarding PETERS. ANGELI stated he was unable to recall whether or not he called the apartment complex. ANGELI admitted he sent text messages to PETERS' ex-husband and her ex-husband's new wife. ANGELI also sent text messages to PETERS' sisters using his own cellular telephone number.

ANGELI explained the pink notebook paper listing PETERS' personal identifying information was obtained by paying for the information from Spokeo.com. ANGELI stated he tried to identify PETERS' cellular telephone number after PETERS changed her cellular telephone number.

ANGELI advised that one of the seized iPad devices belonged to his employer, Collegium Pharmaceutical. TFO Harding located a large black, plastic garbage bag containing numerous empty prescription pill bottles and prescription pill blister packs. ANGELI told TFO Harding he provided the Alzheimer's medication to his friend for his friend to give to his parents. ANGELI explained his friend has trouble opening the blister packs so ANGELI removes the medication from the blister packs and provides the medication to his friend.

ANGELI advised the access code for his iPad was 639500, and the access code for his laptop was Opanaer1. The access code for ANGELI's Apple watch is 0424.

SA Whitehead reviewed the property receipts with ANGELI and ANGELI signed the property receipts. Copies of the search warrant and the property receipts were provided to ANGELI. SA McMillen obtained photographs of seized items and the residence.

ANGELI00000114

Detective Davis informed ANGELI he was under arrest for a violation of the PFA Order. ANGELI was transported by Detective Davis to the Lackawanna County Processing Center. ANGELI was released after posting $20,000.00 bail.

ANGELI00000115

# ATTACHMENT E

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### Receipt for Property Received/Returned/Released/Seized

File # _____

On (date) August 14, 2017 _____

item(s) listed below were:
☐ Received From
☐ Returned To
☐ Released To
☑ Seized

(Name) Anthony Angeli:

(Street Address) 1106 Tennyson Close

(City) Moosic, PA

Description of Item(s): _____

1. Apple I-Phone, Model number A1661, found inside Kitchen by SA Shawn McMillen

2. Black Verzon 4G LTE Tablet, found in Master bedroom by SA Larry Whitehead

3. 32GB Silver I-Pad Model A1219, found inside Kitchen by SA Shawn McMillen

4. Silver I-Pad Model A1566, found inside Kitchen by SA Shawn McMillen

5. Silver I-Pad Model A1567, found inside Kitchen by SA Shawn McMillen

6. Lenovo laptop, black Think Pad, S/N 013AK5 16/04, found inside Kitchen by SA Shawn McMillen (with power cord)

7. White I-pad, 32GB (screen is cracked), found inside Master bedroom by SA Shawn McMillen

8. Silver I-pad, Serial number F9FT6CUBFLMM, found inside Kitchen by SA Shawn McMillen

9. Seven (7) pages of emails to/from Mary Peters and Anthony Angel, found inside laundry area by TFO Chris Lynch

10. One sheet of paper taken from notebook containing information regarding Mary Peters. Found by SA Shawn McMillen inside Kitchen. (pink)

Received By: _____ (Signature) Larry Whitehead

Received From: _____ (Signature)

ANGELI0000012B

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION
Receipt for Property Received/Returned/Released/Seized

File # _____

On (date) August 14, 2017 _____

item(s) listed below were:
☐ Received From
☐ Returned To
☐ Released To
☒ Seized

(Name) Anthony Angeli.

(Street Address) 1106 Tennyson Close

(City) Moosic, PA

Description of Item(s): _____

1L Two (2) small pieces of paper with password information, found inside Kitchen by TFO Chris Lynch.

12 Dell laptop serial number JZCKKYL, found inside laundry area by TFO Chris Lynch

13 Box for Spytec GPS, Model number STI GL300, found by SA Joe Noone in Kitchen.

14. Black Apple I-phone watch found inside Kitchen by SA Shawn McMillen

15. Acer black CPU tower SIN DTSRQAA024Y2F06D5F3000 found in upstairs office by SA Larry Whitehead.

16. Packing Slip from Spytec Inc found by SA Joe Noone inside Kitchen

17. List of tasks Found by SA Joe Noone (pink)

Received By: _____ (Signature)
Larry Whitehead

Received From: _____ (Signature)
ANGELI00000129

# ATTACHMENT F

**User Number:** 1  **User Name:** 94-1

Monday, August 14, 2017

| Time | Pos Src | Speed | Latitude | Street | City | State | Postal Code |
|---|---|---|---|---|---|---|---|
| | # Sats | Direction | Longitude | Landmark | IP Address | Pos Accuracy | |
| 10:38:54 AM | GPS | 0 | 41.348614 | 76 GLENMAURA DR | MOOSIC | PA | 18507 |
| | 12 | NE | -75.687965 | | 72.61.239.38 | 1 | |
| 10:39:54 AM | GPS | 0 | 41.350131 | STEVENSON DR | MOOSIC | PA | 18507 |
| | 10 | SSE | -75.687636 | | 72.61.239.38 | 1 | |
| 10:40:36 AM | GPS | 0 | 41.351042 | 1154 TENNYSON CLOSE | MOOSIC | PA | 18507 |
| | 11 | ESE | -75.686657 | | 72.61.239.38 | 1 | |
| 11:40:36 AM | GPS | 0 | 41.35106 | 1159 TENNYSON CLOSE | MOOSIC | PA | 18507 |
| | 9 | SSE | -75.686842 | | 72.61.239.38 | 1 | |
| 12:34:26 PM | GPS | 1 | 41.351004 | TENNYSON CLOSE | MOOSIC | PA | 18507 |
| | 7 | NNW | -75.686835 | | 72.61.239.38 | 2 | |
| 12:35:26 PM | GPS | 40 | 41.349706 | 868 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 7 | NW | -75.68924 | | 72.61.239.38 | 2 | |
| 12:36:26 PM | GPS | 29 | 41.352541 | 389 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 7 | NE | -75.688086 | | 72.61.239.38 | 2 | |
| 12:37:26 PM | GPS | 36 | 41.360377 | 269 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 8 | N | -75.687885 | | 72.61.239.38 | 2 | |
| 12:38:26 PM | GPS | 17 | 41.368503 | 173 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 7 | ENE | -75.686898 | | 72.61.239.38 | 2 | |
| 12:39:26 PM | GPS | 11 | 41.368735 | 99 BOB MELLOW DR | MOOSIC | PA | 18507 |
| | 9 | E | -75.685032 | | 72.61.239.38 | 1 | |
| 12:40:26 PM | GPS | 3 | 41.368628 | 169 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 9 | W | -75.686569 | | 72.61.239.38 | 1 | |
| 12:41:26 PM | GPS | 0 | 41.368343 | 179 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 8 | WSW | -75.687455 | | 72.61.239.38 | 1 | |
| 12:42:26 PM | GPS | 48 | 41.362789 | 232 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 9 | S | -75.687572 | | 72.61.239.38 | 1 | |
| 12:43:26 PM | GPS | 19 | 41.352114 | 398 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 8 | WSW | -75.6887 | | 72.61.239.38 | 1 | |
| 12:44:26 PM | GPS | 54 | 41.347339 | 268 GLENMAURA NATIONAL BLVD | MOOSIC | PA | 18507 |
| | 8 | WNW | -75.702293 | | 72.61.239.38 | 1 | |
| 12:45:26 PM | GPS | 36 | 41.349539 | Rocky Glen Rd | Pittston | PA | 18641 |
| | 9 | NNE | -75.709321 | Rocky Glen Park | 72.61.239.38 | 1 | |
| 12:46:26 PM | GPS | 33 | 41.3594 | 708 ROCKY GLEN RD | PITTSTON | PA | 18641 |
| | 9 | NE | -75.705913 | | 72.61.239.38 | 1 | |
| 12:47:26 PM | GPS | 16 | 41.364346 | 104 1ST ST | MOOSIC | PA | 18507 |
| | 7 | SW | -75.71276 | | 72.61.239.38 | 1 | |
| 12:48:26 PM | GPS | 21 | 41.361165 | MAIN ST | MOOSIC | PA | 18507 |
| | 9 | SE | -75.712369 | | 72.61.239.38 | 1 | |
| 12:49:26 PM | GPS | 13 | 41.360265 | 834 8TH ST | MOOSIC | PA | 18507 |
| | 9 | NNE | -75.708163 | | 72.61.239.38 | 1 | |
| 12:50:26 PM | GPS | 0 | 41.36016 | 843 8TH ST | MOOSIC | PA | 18507 |
| | 9 | SSW | -75.708211 | | 72.61.239.38 | 1 | |
| 12:51:26 PM | GPS | 0 | 41.360167 | 840 8TH ST | MOOSIC | PA | 18507 |
| | 9 | SSW | -75.708119 | | 72.61.239.38 | 1 | |
| 12:52:26 PM | GPS | 0 | 41.360099 | 847 8TH ST | MOOSIC | PA | 18507 |
| | 9 | SSW | -75.708152 | | 72.61.239.38 | 1 | |
| 12:53:26 PM | GPS | 0 | 41.360092 | 848 8TH ST | MOOSIC | PA | 18507 |
| | 8 | SSW | -75.708175 | | 72.61.239.38 | 1 | |
| 12:54:26 PM | GPS | 0 | 41.360148 | 844 8TH ST | MOOSIC | PA | 18507 |
| | 10 | SSW | -75.708187 | | 72.61.239.38 | 1 | |

1/24/2018 7:25:22 AM - GPS History Detailed

**User Number: 2**          **User Name: 94-2**

Monday, August 14, 2017

| Time | Pos Src | Speed | Latitude | Street | City | State | Postal Code |
|------|---------|-------|----------|--------|------|-------|-------------|
| | # Sats | Direction | Longitude | Landmark | IP Address | Pos Accuracy | |
| 10:22:17 AM | GPS | 16 | 41.345252 | 494 GLENMAURA DR | MOOSIC | PA | 18507 |
| | 7 | SSE | -75.702113 | | 108.111.34.12 | 1 | |
| 10:23:17 AM | GPS | 28 | 41.343576 | 321 GLENMAURA DR | MOOSIC | PA | 18507 |
| | 8 | E | -75.695684 | | 108.111.34.12 | 1 | |
| 10:24:17 AM | GPS | 11 | 41.344339 | 200 GLENMAURA DR | MOOSIC | PA | 18507 |
| | 7 | NE | -75.689399 | | 108.111.34.12 | 2 | |
| 10:25:17 AM | GPS | 0 | 41.348447 | 211 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 8 | ENE | -75.687914 | | 108.111.34.12 | 1 | |
| 10:26:17 AM | GPS | 0 | 41.348419 | 210 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 9 | ENE | -75.687921 | | 108.111.34.12 | 1 | |
| 10:27:17 AM | GPS | 0 | 41.348424 | 211 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 9 | ENE | -75.687944 | | 108.111.34.12 | 1 | |
| 10:28:17 AM | GPS | 0 | 41.348397 | 210 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 9 | ENE | -75.687919 | | 108.111.34.12 | 1 | |
| 10:29:17 AM | GPS | 0 | 41.348406 | 210 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 9 | ENE | -75.687931 | | 108.111.34.12 | 1 | |
| 10:30:17 AM | GPS | 0 | 41.348414 | 210 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 9 | ENE | -75.687925 | | 108.111.34.12 | 1 | |
| 10:31:17 AM | GPS | 0 | 41.348436 | 209 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 9 | ENE | -75.687943 | | 108.111.34.12 | 1 | |
| 10:32:17 AM | GPS | 0 | 41.348444 | 211 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 10 | ENE | -75.68793 | | 108.111.34.12 | 1 | |
| 10:33:17 AM | GPS | 0 | 41.348433 | 211 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 10 | ENE | -75.687931 | | 108.111.34.12 | 1 | |
| 10:34:17 AM | GPS | 0 | 41.348477 | 209 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 8 | ENE | -75.687948 | | 108.111.34.12 | 1 | |
| 10:35:17 AM | GPS | 0 | 41.348472 | 211 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 10 | ENE | -75.68791 | | 108.111.34.12 | 1 | |
| 10:36:17 AM | GPS | 0 | 41.348468 | 213 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 10 | ENE | -75.68788 | | 108.111.34.12 | 1 | |
| 10:37:17 AM | GPS | 0 | 41.34849 | 211 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 10 | ENE | -75.687919 | | 108.111.34.12 | 1 | |
| 10:38:17 AM | GPS | 0 | 41.348498 | 209 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 10 | ENE | -75.687927 | | 108.111.34.12 | 1 | |
| 10:39:17 AM | GPS | 0 | 41.348461 | 209 SALINGER CLOSE | MOOSIC | PA | 18507 |
| | 8 | ENE | -75.687936 | | 108.111.34.12 | 1 | |
| 10:40:17 AM | GPS | 12 | 41.350298 | STEVENSON DR | MOOSIC | PA | 18507 |
| | 9 | NE | -75.687498 | | 108.111.34.12 | 1 | |
| 10:40:41 AM | GPS | 0 | 41.350917 | 1111 TENNYSON CLOSE | MOOSIC | PA | 18507 |
| | 10 | N | -75.686984 | | 108.111.34.12 | 1 | |
| 11:40:41 AM | GPS | 0 | 41.350894 | 1107 TENNYSON CLOSE | MOOSIC | PA | 18507 |
| | 9 | NNE | -75.686969 | | 108.111.34.12 | 1 | |
| 12:33:50 PM | GPS | 0 | 41.350957 | 1126 TENNYSON CLOSE | MOOSIC | PA | 18507 |
| | 8 | NNW | -75.686953 | | 108.111.34.12 | 2 | |
| 12:34:50 PM | GPS | 41 | 41.35027 | 853 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 7 | NNW | -75.689565 | | 108.111.34.12 | 2 | |
| 12:35:50 PM | GPS | 44 | 41.357999 | 305 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 7 | NNW | -75.686902 | | 108.111.34.12 | 2 | |
| 12:36:50 PM | GPS | 12 | 41.367484 | 185 MONTAGE MOUNTAIN RD | MOOSIC | PA | 18507 |
| | 8 | N | -75.687325 | | 108.111.34.12 | 2 | |

1/24/2018 7:25:22 AM - GPS History Detailed

Page 13 of 17

EVENT#: 460462427

SID#: 44583267

NAME: ANTHONY

ANGELI

ARREST DATE: Aug 14 2017 1:16PM

AGE AT ARREST: 54

HEIGHT: 601

WEIGHT: 195

HAIR COLOR: BROWN

EYE COLOR: BROWN

CPIN DATABASE

